And everyone is present, so no need to call attendance, and we'll start right away with Romeo & Juliette v. Asara. May it please the Court? Will Schuman, representing the appellants Asara, Laser, and myself, Will Schuman, individually, come as, on an appeal, appealing for... Could you please speak up? Yes. We are appealing an injunction that was entered by the District Court, which was, in our opinion, invalid because it is overbroad in that it says that any of Asara or my own agents, officers, directors, employees, successors, or assigns, are prohibited from making any defamatory statement about plaintiff and its business or its employees. That injunction covers, by its plain meaning, covers people that are not parties to the case. It covers people that are non-competitors of the plaintiff. It covers even... Did you ask the District Court for any kind of modification to deal with the concerns you're identifying here? We were asked to submit, in advance, proposed language for an injunction. That was actually before any ruling was held that was rendered on the merits, and we did so. You know, the injunction of successors and assigns is not routine, but it's also not extraordinary where it's appropriate to enforce against those to whom a business may be transferred or successors in interest. Now, if I understand your argument now, you're arguing this mostly with respect to yourself, not with respect to Romeo and Juliet? That's correct. And it makes most sense, I think, with respect to myself. For an individual, I mean, what successors and assigns are you concerned about there? I mean, the business might have successors and assigns, but it's not apparent to me how an individual would. That's correct. The language itself, the language says any of my employees or agents would apply to. Right. So what's the problem with that? That's intended to avoid circumvention of the injunction. Right. Well, I personally haven't been in that business. All of the defendants in the action have left the business completely. The business shut down in December of 2013, but I had not been affiliated with the business except as counsel representing in this action. What business are you talking about now, Romeo and Juliet? Romeo and Juliet is the plaintiff. Assar is the defendant, yes. But the district court noted that there was the possibility of it resurrecting in light of certain circumstances. It's continued maintenance of a website in that name, and let's see, what else did it have? Maintenance of a fully operational website, correspondence suggesting the purchase of another business. So the district court had a basis for thinking there might be successors. The district court only could reach that basis by disregarding the covenant that was entered, that was clear and unmistakable, a non-compete entered into by all of the defendants, including the ones against whom the case was dismissed, and including the ones against whom reached an alternative resolution with the plaintiffs. None of those defendants, the business itself, will ever operate in that arena again. As we explained, the reason that the website would still be up, and it may be up to this day, is because there's no one there to close it down. There's no one there to do any of the wrap-up or winding up aside from myself. How are you harmed by an injunction that applies to successors and assigns if you're never going to resurrect it? The business itself might not be, but I personally would be, because it means that in any work that I do, any of my employees, regardless of whether they are competitors or not, I mean, outside of competition with Romeo and Juliet, I don't think the Lanham Act would even apply if it's not a commercial statement or statements made in commerce. The injunction doesn't draw that distinction. You signed the covenant not to compete personally. Yes. How is that any different? The covenant not to compete is different in the sense that a violation of it, I can't expect that there ever would be, would not be subject to contempt order from the court. Right? It's ‑‑ I don't ‑‑ the district court took the opinion or took the position. It lasted 10 years. Right? And it was signed in February 2015. And there's a nondisparagement part to it as well. That's correct. So isn't that the equivalent, really? The district court as well took the position that because the language of the covenant not to compete was broad, then therefore it had rights to give an injunction of anything up to that. I don't believe that that's the case. What you are concerned about is that even though you've hemmed yourself in with a covenant not to compete, you're concerned about possible contempt personally. Yes, and having an injunction entered against me and having an injunction ‑‑ Even though you agree that the terms of the injunction as to you, more or less, are coextensive with the terms of the covenant not to compete. That's correct. There are additionally, with the covenant not to compete, I think it's ‑‑ And the fact that the business has closed. It closed due to insolvency. It has no employees. It has not had employees. It does not have any operating accounts. We'll never, again, everyone that has ever been involved in it has even moved away. The only reason that there is someone here today is because I've been counsel for the business. I'm not at leisure. I don't even know who would authorize me to remove myself as counsel. So I continue, but the business itself will never operate. And so an injunction, the injunction is unnecessary in the sense that if the business and myself are never competing again, there's no danger or likelihood of a further violation of the Lanham Act by stating anything disparaging against Romeo and Juliet as a competitor. I see that I'm out of time. Well, you have until the red light goes on, but thank you. Thank you. You want to reserve time in rebuttal, so we'll hear from your adversary. Good morning, Your Honors. My name is Claudia Jaffe. I'm an attorney at Butler, Fitzgerald, Fiveson & McCarthy. I represent Plaintiff Eppley, Romeo and Juliet Laser. I'm here with David Fiveson of my firm. He joins me in asking this court to affirm the decisions of Judge Cote. Today, if time allows, I would like to address the following issues. First, the standard of review on these appeals. I'd like to remind the court that the district court did not err in granting summary judgment to my client. I also urge this court to conclude with me that the district court correctly denied Mr. Schuman's motion to dismiss on grounds of mootness. Further, that the preliminary injunction is not void for vagueness or in other means. And lastly, that appellants have no standing to challenge here the terminations that they violated claims asserted in Clause 5 to 8 of the Second Amended Complaint. So there is no basis for them to challenge the lower court's determination of those claims. The standard of review here on a motion to dismiss, as well as on a motion for summary judgment, is de novo. The court needs to determine whether there are any genuine issues of material fact remaining that needed to be heard at trial. The lower court found that there were none. Here, the court should affirm whether the district court applied the correct substantive law. This court may affirm the determinations of the lower court for the reasons stated in the opinions that are being challenged, as well as any other reasons supported in the record. The non-moving parties here, Mr. Schuman and Assara, may not rely on conclusory allegations, on unsubstantiated speculation, surmise, or conjecture. Can I just ask you about the injunction? Yes, please. That is, why did it take you so long to request an injunctive relief in this case? I think it was like 2013, and the kind of train had left the station by then. I mean, it was kind of over by then. Why did you seek it at that late date and not before? I hear your point. It was really a question. It's even better for me, Your Honor. I hear your question. There may be a good answer to it. I've got a few. I'll try with my best one first. The short answer is I don't think there's any dispute that the purpose of my client bringing this litigation was to stop the offending conduct being performed by Mr. Schuman and his partners in the business enterprise. I would agree with the court it would have been better if we expressed the The damages are not even sought anymore, right? Right. And the reason the damages were not sought is because you need a little history to get this point. Mr. Schuman's partner, a former associate at the Paul Weiss firm where Mr. Schuman also worked, and he started this business, that person's name is David Tayar. Mr. Tayar came to my client's business on three occasions, and while there he scouted information. He scoped, did a little reconnaissance work. So until my client got wind of what he was doing and the company opened its business, and then my client said this guy's not allowed in our business anymore. So there was never any question once we learned that they were behind the offending post that we wanted to stop them. It would have been better if we said so expressly, but the clear purpose was to stop the conduct that violated the Lanham Act and violated New York law, the defamation law, unfair competition, and disparagement. It was an error, an oversight perhaps, but we also felt that the issue was covered because the Lanham Act specifically allows for, and the New York statute we cite, a general business law, also cites authority for granting an injunction. That being said, the court could have, and I'll just make one correction if I may to the court's statement. The court was advised well before 2013 that we were seeking an injunction. Mr. Fiveson was representing the client at the time. I was in a more junior role, and he informed the court that we were not looking for damages precisely for the reason that Mr. Thayer had been snooping around our business already, and we were concerned about disclosing to him our financial records. He learned how to develop client base from us. He learned how to operate the business. My client is a very social, friendly person, and when Mr. Thayer questioned him, he shared his knowledge with him, and we were not about to do the same when it came to the issue of disclosing financials, nor did we need to because the issues went to the defamation of my client's reputation, and they were defamatory per se, so we didn't need to establish financial loss in order to make a case. And my client made a judgment call that we would pursue only the injunction and not the financial aspect, which only goes to show that the issue of my client's reputation, its business reputation, and the services provided by its employees were critical here. They were paramount. The money was not the issue. It was the success and the operability of my client's enterprise, which opened four years before Mr. Schuman and Mr. Thayer opened theirs. So that's why we had the injunction. Am I right that the business did better? I'm sorry? Am I right that your client's business improved after the postings? It depends on the period of time you want to measure, Your Honor. Judge Loy, the issue of improvement I think is somewhat difficult to quantify because what we're facing is an unknown. We don't know how many people would have come to our door but for the comments made by Mr. Schuman and his co-defendants. We can tell you business has come down now relative to when this case arose. There's been a fluctuation over time, but we can't attribute the reasons for it. The economy has declined, so that could drop some. But we do well. We believe we would have been doing better. But actually, as we told Judge Moss, Magistrate Judge Moss, we're not looking to be compensated for any loss, diminution in value of our business. The issue is preserving our client's reputation so that it can continue to grow the business in the future. We needed to stop Mr. Schuman and his co-defendants from engaging in the conduct which violated the Lanham Act and the New York laws that are cited in our brief. I think I could dispense with this point with the standard review for an injunction. The Court is well aware of the standard under eBay and in this circuit under Salinger. The Court was correct to grant summary judgment to my client, Mr. Schuman, in arguments before Judge Cote when she was assigned the case, after previously being before both Magistrate Judge Moss and Judge Gosset. When we were before Judge Cote in early winter of last year, Judge Cote commented that defendants no longer challenge the notion or our argument that they were responsible for these posts. Now, that is a major departure from where this case began. Mr. Schuman represented himself and all other defendants here, and he steadfastly denied responsibility or culpability for posting any of these comments, things that said, I heard a horror story about this place. What's the matter? What happened? Did someone die? Well, nearly. Someone had a heart attack. So-and-so got burned. Comments like that, that are not the antithesis of mere puffery, but go to the reputation and concerns that a customer or consumer might have if deciding to have laser hair removal or other services performed. I point the Court to some recent cases, Upstate and Northern District of New York, the Chobani cases, where the party, Chobani, made comments about its competitors. And when you make a comment about a competitor, and you actually use that competitor's name, that disparagement is direct. Chobani, the comments were that the competitor puts chlorine in their yogurt, and the other comment was that a different competitor has an ingredient in it, the same thing that's used to kill bugs. Is this in response to the argument that you have failed to show injury? I'm trying to find out why you're bringing up these facts, which we're aware of from the record. But what's your point? Actually, that case was not in the record. That's why I brought it to the Court's attention, and it's recent and cited after Judge Coates' early spring decisions. But not since you're brief. But in any event, go ahead. So, Your Honor, Mr. Shuman talked about mootness, and we respectfully disagree with him and agree with the lower court that this is not a moot matter here. The defendants, as I described earlier to Judge Droney, have a long history of engaging in deceit, both in their conduct that is the subject of our lawsuit and in their conduct during the course of the lawsuit. So here, defendants posted these comments about my client. They were false. There are certain cases, I'm sure there are things that are true, that were posted on various websites. But we have pointed out and traced to particular IP addresses belonging to Mr. Shuman, belonging to Wassara, belonging to David Tayar at his residence, belonging to the Paul Weiss firm where David Tayar and Will Shuman worked. We've traced comments to them that are defamatory. First, the defendants denied making those comments. They later came around and said, well, if we made them, then we were permitted to make them. That was in 2013. Then they came around and said, well, we made them, but they were true. Then they said, well, we're allowed to make them. And then eventually, at the end of the day, when we got before Judge Coates, and on this point I will disagree with Mr. Shuman, the court instructed us to get together and see if we might come up with a consent injunction. It instructed me to have two days to prepare one. I did, gave it to Mr. Shuman by the appointed deadline, and he had the weekend to decide whether he wanted to change any of the terms that I had proposed. He did not. He did not submit a counterproposal. He merely wrote a letter to the court criticizing everything, basically, that the court had done at the court conference. He did not submit an alternative. Instead, as the court noted, he and his co-defendants, except for Assara, submitted a covenant. That covenant was not anything that they had presented to me or to my client or my firm to consider. It was unilaterally written without comment, and really as a grenade to hold us back as we were about to win the final battle, I would believe. The covenant, as the court has noted, is in large respects similar to the language used by the court. We would ask that the court affirm that. I see my time is up. If you have any further questions for me, I'd be glad to respond to them. Otherwise, I would conclude by asking this court to affirm the determinations of the lower court, uphold the preliminary injunction, uphold the grant of summary judgment to my client, affirm the dismissal of the motion to dismiss on mootness. I thank the court for the time. Newman, you have some time for rebuttal. Thank you. There's something that doesn't quite smell right with plaintiff's assertions here. They're claiming that we gave a covenant not to compete, not to disparage, that granted everything that they would have wanted, and that we used that somehow as a weapon against them from winning. I'm not sure they said they granted everything they wanted. That's your position, but I'm not sure that counsel took that position. That's fair, although it's the language that the district court then used, and I think plaintiff hasn't objected to it yet. So to claim that we were giving them exactly what they wanted and that somehow that was an act of aggression, that that was to win the final battle against them, or as they were about to win the final battle. Why do you think we should vacate it? Sure. The district court order is premised upon the standards for an injunctive relief, eBay and Salinger, which require some sort of concrete, imminent, threatened harm. The injunction against myself personally was based on a single one statement that they claimed to have been made by me in 2009. That was about 50 months, if memory serves correctly, prior to the date that injunction was even requested, and it was about eight years between the date of that statement and the date that the injunction actually issued. Again, the business is out of business. I haven't been affiliated with the business since 2011, I believe, when I left. Everything that's been going on has been- Did you hire a laser technician in 2015? No, we certainly did not. Isn't there evidence in the record? There is an e-mail that appears that way. That was part of winding up the business, trying to find a buyer for the laser and not acting as if we were closing down so that he would squeeze us some advice. Wasn't the district court entitled to consider that in connection with providing injunctive relief in this case? Even though you disputed, there was evidence. You agree with that? Absolutely. I suppose so. However, the district court says that there was no reasonable inference to be drawn as to when conduct ceased, although it did agree that conduct had ceased. So if conduct had ceased and there was no evidence of it restarting, forget about whether or not the business would operate again. There's a possibility of restarting. You agree that we look at the scope challenge for abuse of discretion, right? Correct. Okay. But if a business is merely operating, that in itself is not evidence that any wrongdoing will occur. When it has a history of past wrongdoing, that's what the district court is relying on here, that there's the possibility of further misconduct without a specific order. Perhaps. Again, I think that if 50 months after a statement was made, nothing was ever done, if everyone that was being accused of making the statement has given a consent or a covenant not to complete, covenant not to disparage, that covered everything that the complainant was complaining of, and the business is closed down, I think that should be sufficient to show that there's not a concrete showing of imminent harm. And that burden is squarely on the plaintiff to show, not on the defendant. And it seems to me that, in the opinion the district court looked for, looked at a lack of evidence that something would resume and then said, well, that's defendant's burden to prove that that lack of evidence actually means that there would be something that was ongoing. Thank you very much. Thank you. Thanks to the parties for your arguments. We're going to take the case under advisement. Thank you.